IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OXBO, INC.,          :

      Plaintiff/
Counterclaim-Defendant,

     v.              :       Case No. 3:22-cv-46

KONECRANES NUCLEAR        JUDGE WALTER H. RICE
EQUIPMENT & SERVICES, LLC.,    :

      Defendant/
Counterclaim-Plaintiff.

---

DECISION AND ENTRY OVERRULING MOTION FOR PARTIAL
SUMMARY JUDGMENT FILED BY DEFENDANT/COUNTERCLAIM-
PLAINTIFF KONECRANES NUCLEAR EQUIPMENT & SERVICES, LLC
(DOC. #40) AND SUSTAINING IN PART AND OVERRULING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY
PLAINTIFF/COUNTERCLAIM-DEFENDANT OXBO, INC. (DOC. #42)

---

Plaintiff Oxbo, Inc. ("Plaintiff," "OXBO," or "Oxbo") filed this lawsuit against

Konecranes Nuclear Equipment & Services, LLC ("Defendant," "KNES," or

"Konecranes"). Doc. #1. Plaintiff brought three claims against Defendant seeking

damages for breach of contract, unjust enrichment, and promissory estoppel. *Id.* at

PageID #7–8. Defendant answered and brought three counterclaims of their own

against Plaintiff. Doc. #10. These counterclaims mirrored Plaintiff's claims, seeking

damages for breach of contract, unjust enrichment, and promissory estoppel. *Id.* at

PageID #78–79. Pending before the Court are two Motions for Partial Summary

Judgment, one filed by Plaintiff, Doc. #42, and one filed by Defendant. Doc. #40. Both parties have submitted responses in opposition to the competing motions, Doc. #45; 47, as well as replies in support of their own. Doc. #48; 49.

For the reasons set forth below, Defendant's Motion for Partial Summary Judgment, Doc. #40, is OVERRULED and Plaintiff's Motion for Partial Summary Judgment, Doc. #42, is OVERRULED IN PART AND SUSTAINED IN PART.

## I.   Factual Background

This case concerns two companies that contracted to transport a 140-ton crane form Manitowoc, Wisconsin, to Kittery, Maine. The crane was manufactured by Defendant in Wisconsin and was to be delivered to the Portsmouth Naval Shipyard in Maine. In order to transport the crane to its final destination, Defendant executed an agreement with Plaintiff in which Plaintiff would provide "complete turnkey service" for the delivery. Doc. #40, PageID 239–40. This service was to include, in addition to the actual transportation of the crane, loading the crane onto the travel barge and unloading the crane onto a set of rails at the destination. Doc. #1, PageID #21.

Both Plaintiff and Defendant agree that a contract was created between the parties. While the parties dispute the interpretation of the contract, including the breadth of the liquidated damages clause and the allocation of fault in delays that

2

occurred, neither party has presented evidence that this case goes beyond the written terms of the contract itself.

The contract between the parties, facially titled as the "Change to Purchase Order," called for Plaintiff to transport the crane via a barge through the Great Lakes, the St. Lawrence River, and down along the east coast to Kittery, Maine. Doc. 1, PageID #23. The contract called for a "turnover date," or the date on which Plaintiff was permitted to take control of the crane, of April 30, 2021. Doc. #1, PageID #30. Also in the contract, the parties agreed to bilateral liquidated damages in the event of delays. Any delays caused by Plaintiff after the turnover date were to be documented by both parties and delay time was to be added to the back end. *Id.* at 28–29. If these delays caused Defendant to become liable to their ultimate customer for liquidated damages, those damages would either be passed on to Plaintiff or charged at a set price of $9,975 per day. *Id.* at PageID #29. Likewise, if the turnover date or Plaintiff's proposed delivery date were delayed by Defendant, Defendant would become liable to Plaintiff for liquidated damages. *Id.* These damages were designed to escalate based on the number of days delayed.[1] *Id.*

Because of the need for additional testing and unexpected repairs, the turnover date was delayed from April 30, 2021, to May 12, 2021. Doc. #42, PageID

---

[1] The escalating liquid damages were as follows: $34,970/day for days 1–6, $45,170/day for days 7–13, and $55,340/day for days 14+. Doc. 1, PageID #29.

3

446. There were additional delays that occurred in the days following the turnover, but the parties dispute the factual causes of the delays, as well as their own liabilities. Doc. 42, PageID #447; Doc. #40, PageID #242.

The crane eventually left Wisconsin on May 30, 2021, en route for Maine. Doc. #42, PageID #447. Just after leaving, also on May 30, 2021, the barge struck a bridge abutment and various portions of the crane were damaged. Doc. #40-4, PageID #374. The crane eventually arrived in Kittery, Maine on June 16, 2021, making the naval voyage three days quicker than the schedule called for. Doc. #42, PageID #448. While the crane was yet underway, the parties negotiated a change to the contract, adding a clause outlining the rental and use of a larger 600-ton crane to be used in Kittery, Maine, to help offload the crane in question in this litigation. This new contract was agreed to on or about June 16, 2021. Doc. #45, PageID #1363. Like the original contract, this new addendum contained a liquidated damages clause, stipulating damages in the event that delays caused additional costs for the 600-ton crane rental. *Id.*

Once in Maine, there were additional delays associated with offloading the crane onto the rails at the shipyard. The parties dispute the facts concerning the lengths of the various delays and to whom they are properly attributed. *See* Doc. 40, PageID #243; Doc. #42, PageID #447–48. The crane was ultimately placed on the rails at the shipyard on June 28, 2021, 21 days later than the original contract

called for. Doc. #40, PageID #251; Doc. #47-4, PageID #1576. Even with the crane delivered, Plaintiff's obligations were not yet complete. Plaintiff continued to work unloading counterweights and cleaning the barge until July 12, 2021. Doc. #42, PageID #448.

As the project wrapped up, the parties began discussing the delay damages and negotiating the resulting liquidated damages that had occurred. Doc. #42, PageID #449. Plaintiff, observing that Defendant failed to provide documentation of delays caused by Plaintiff, claimed that all delays must be attributable to Defendant. Plaintiff, therefore, created and sent an invoice to Defendant seeking $1,231,563.75. Doc. #1, PageID #46.

Plaintiff filed this suit on February 14, 2022, alleging a breach of contract and seeking the amount of the invoice ("Claim 1"). Doc. #1, PageID #7. Alternatively, Plaintiff claims that Defendant was unjustly enriched by Plaintiff and seeks reimbursement for benefits that Defendant received ("Claim 2"). *Id.* at PageID #7–8. Finally, Plaintiff seeks reimbursement under a theory of promissory estoppel, whereby Defendant promised to pay for certain charges ("Claim 3"). *Id.* at PageID #8–9.

Defendant filed an answer containing counterclaims on April 6, 2022. Doc. #10. Defendant's counterclaims alleged that Plaintiff breached the contract ("Counterclaim 1"), that Plaintiff was liable under promissory estoppel

5

("Counterclaim 2"), and that Plaintiff was liable under a theory of unjust enrichment ("Counterclaim 3"). Doc. #10, PageID #78–79.

## II.  Legal Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified]

6

pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id*. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091

7

(1990). If it so chooses, however, a court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Analysis

#### A. Konecranes's Motion for Partial Summary Judgment

Defendant's Motion for Partial Summary Judgment seeks three judicial findings: (1) that the total cost method of calculating damages is not a permissible method of calculation to be used here; (2) that Plaintiff should not be permitted to recover both liquidated damages and itemized delay damages; and (3) that the timeframe for which Plaintiff may recover liquidated damages should be concluded by the "delivery date" or the date on which the crane was placed on the rails in Kittery. Doc. #40, PageID #238–39. The Court will analyze each of these requests separately.

##### 1. Use of Total Cost Method

Defendant's first request is a finding that Plaintiff is barred from using a method known as the "total cost" method to identify damages. Doc. #40, PageID #245. Total cost is a method of calculating damages by which the damages are estimated according to "the difference between the total costs incurred in performance of the contract and the bid price." *Eagle Supply and Mfg, L.P. v. Bechtel Jacobs Co., LLC*, 868 F.3d 423, 432–33 (6th Cir. 2017) (internal quotation and brackets omitted). Put more clearly, this method places the burden of any added

8

costs incurred on the breaching party, thereby protecting the expected profits to be realized by the non-breaching party. Courts understand, however, that this method lacks an incentive for non-breaching parties to reduce the amount of new costs and therefore are reluctant to use this method as anything less than a last resort. *Cavalier Clothes, Inc. v. U.S.*, 51 Fed.Cl. 399, 417 (2001).

When the total cost method is invoked, plaintiffs must prove four elements: (1) the nature of the particular losses make it impossible or highly impractical to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs are reasonable; and (4) it was not responsible for the added expenses. *Eagle Supply and Mfg, L.P.*, 868 F.3d at 432. Here, Defendant draws particular attention to the fourth element, arguing that Plaintiff cannot show that it was not responsible for the added expenses. Doc. #246, PageID #245–46.

Plaintiff's response to Defendant's argument is threefold. First, they claim that they are not attempting to use the total cost method at all. Doc. #45, PageID #1364–65. Second, Plaintiff claims that even if they were using a total cost method, their procedures for documenting delays on the project would show if they were responsible, and the resulting lack of such documentation carries the inference that Plaintiff did not cause any delays. Third, this inference shifts the burden to

Defendants to show that Plaintiff caused concurrent delays; a showing which Defendant has failed to make.

As an initial matter, the parties disagree over whether the total cost method is being invoked by Plaintiff here. Defendant's theory is that, in effect, Plaintiff's claim of 24 days' worth of damages, without a fact-intensive inquiry into the reason, amounts to a total cost damage theory. Doc. #48, PageID #1703. Of this, the Court is unconvinced. A traditional total cost theory from Plaintiffs would involve a showing that the contract as originally agreed to contained a certain amount of profit and that their claimed damages here were such that they maintained their original profit margin. Plaintiff's claim here, however, is one of liquidated damages, based on the number of days of delay, combined with certain other itemized damages. Doc. #40, PageID #244. As a result, Defendant's argument against using the total cost method is unnecessary as Plaintiff has not attempted to use such a method.

Yet, Defendant's larger point has merit. Ohio law recognizes that where damages result from mutual conduct or where both parties are responsible for a delay, the party bringing the claim is barred from assessing liquidated damages for the delay. *Carter Steel & Fabricating Co. v. Ohio Dept. of Transp.*, 721 N.E.2d 1115, 1116–17 (Ohio Ct. Cl. 1999); *Lee Turzillo Contracting Co. v. Frank Messer & Sons, Inc.*, 261 N.E.2d 675, 679 (Ohio Ct. App. 1969). Therefore, Plaintiff will not be able to recover the liquidated damages it seeks if it contributed to the delay.

10

Plaintiff seemingly understands this principle and responds by pointing to the lack of documentation regarding any delays that occurred during the operation as establishing that they are free from blame for any delay. Doc. #45, PageID #1365–66. At the very least, Plaintiff believes that this showing is sufficient for any initial burden they may have and that the burden is then on Defendant to show that Plaintiff *did* contribute to the delay. *Id.*

Plaintiff's first point is a waiver theory. If this theory is correct, then Defendant cannot claim now that Plaintiff caused delays because they did not make those claims at the time the operation was ongoing. Doc. #45, PageID #1366. Plaintiff bases this stance on its reading of the contractual obligations of the parties, specifically a section that states: "Any delays caused by OXBO after the turnover date will be documented by both parties and time added to back end." Doc. #40-2, PageID #294. Neither Plaintiff nor Defendant documented delays while the operation was yet ongoing; it was only after the conclusion of the project that the delays were itemized. This issue reduces, therefore, to a question of whether the failure to document delays while they occurred amounted to a waiver of the ability to claim delays after the fact.

Waivers generally may be made by express language within an agreement or may be inferred by acts or conduct from which an intention to waive may be found. *Armco, Inc. v. Reliance Nat. Ins.*, 19 F. Supp. 2d 807, 815 (S.D. Ohio 1998) (citing

11

*Ohio Farmers' Ins. v. Cochran*, 135 N.E. 537 (Ohio 1922)). Proof of a waiver must be by such clear and convincing evidence as to leave no reasonable doubt about the waiver. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 678 N.E.2d 519, 528 (Ohio 1997). Given that the language in the contract here provides no express language describing a waiver like the one Plaintiff seeks to invoke, the only remaining alternative is a waiver based on the parties' conduct. Plaintiff presents little, if any, evidence to show that Defendant's conduct showed an intention to waive the ability to argue later about any delays that may have occurred. Therefore, this Court cannot conclude as a matter of law that Defendant waived this ability and will permit Defendant to present evidence of delays in supporting and opposing the motions.

Defendant points to four specific actions from which they argue Plaintiff caused at least some of the delay: (1) the days where Plaintiff worked less than 12 hours; (2) the lack of support beams when the crane was ready for them; (3) the damage to the crane while underway; and (4) the production of a damaged manlift in Maine. Doc. #40, PageID #247–49. Plaintiff responds to each of these contentions and provides explanations as to why they did not lead to any delays attributable to Plaintiff. Doc. #45, PageID #1367–71.

After reviewing the arguments of both parties, this Court sees potential merit in both views. As a result, this Court believes that a reasonable jury could find either

that none or some of the delay was caused by Plaintiff's actions and therefore Summary Judgment is not proper here. Plaintiff may present evidence at trial that the delay was wholly because of the actions of Defendant and Defendant, likewise, may present evidence that Plaintiff's own actions concurrently caused the delays for which they now seek liquidated damages. Summary judgment is, therefore, not justified on this issue, as genuine issues of material fact exist.

> **2.** ***Availability of Both Liquidated Damages and Itemized Delay Damages***

Defendant's Motion contains a portion of the delay invoice sent by Plaintiff after the operation. Doc. #40, PageID # 244. This invoice contains a measure of the liquated damages and contains five additional line items pertaining to more specific claims:

| DESCRIPTION | RATE | AMOUNT |
|---|---|---|
| Twenty one day delay from contract turnover date to date crane was set on rails in Portsmouth.<br>Days 1 through 6 = $34,970.00/day = $209,820.00<br>Days 7 through 13 = $45,170.00/day = $316,190.00<br>Days 14 through 21 = $55,340.00/day = $442,720.00 | 968,730.00 | 968,730.00 |
| Three day delay charge for Oxbo not being able to work 07/03, 07/04 & 07/05/2021, as per Naval Base protocol caused directly by KNES delay Days 22 - 24 (cummulative) = $55,340.00/day = $166,020.00 | 166,020.00 | 166,020.00 |
| Three additional days of use for Astro 600T Crane 6/18, 6/25 & 6/26/2021 - $29,260.00 | 29,260.00 | 29,260.00 |
| Steel plate rental necessary to overcome inadequate ground pressure rating as per contract - $12,075.00 | 12,075.00 | 12,075.00 |
| Additional Engineering necessary to reverse loadout procedure and ballasting plan due to KNES inability to load equipment in sequence as planned - $6,000.00 | 6,000.00 | 6,000.00 |
| Modification to front tie beam to match incorrect hole pattern in the crane provided by KNES - $4,600.00 | 4,600.00 | 4,600.00 |
| Delay charges for assist tugs that were necessary for exiting the bay in Manitowoc and navigating the Welland Canal - $44,878.75 | 44,878.75 | 44,878.75 |

Doc. #40, PageID #244; Doc. #1, PageID #46.

13

Defendant objects to Plaintiff's attempt to collect both liquidated damages and specific damages that are outlined in an invoice. Defendant believes that to claim both forms of damages, either Plaintiff must be admitting that the liquidated damages serve as a penalty or Plaintiff is seeking double damages for the costs incurred. Doc. #40, PageID #249.

Plaintiff responds by stating that in the Change Order executed by the parties on June 16, 2021, Defendant agreed to pay certain other costs beyond any potential liquidated damages claim. Doc. #45, PageID #1371–72. Plaintiff mentions charges that relate to the renting of the 600-ton crane and those relating to the work of third-party subcontractors that were not part of the delay scope of work. *Id*. In support of that stance, Plaintiff points to deposition testimony of Keith Settle, a representative of Defendant, who testified to the same. *Id.*

Defendant attempts to disavow the testimony of Mr. Settle in favor of the invocation of the principle of contract law that one party's subjective meaning must give way to the plain language of a contract. Doc. #48, PageID #1711–12.

As a general matter, liquidated damages represent an agreement by the parties as to the measure of actual damages that would result from a future breach of the contract. *Boone Coleman Constr., Inc. v. Piketon*, 50 N.E.3d 502, 508 (Ohio 2016). When a contract uses a valid liquidated damages clause, no larger or smaller sum can be awarded even though the actual loss may be greater or less. *Id.* Liquidated

14

damages can be thought of as an advance settlement between the parties of the anticipated actual damages. *Id.* However, parties may also agree that liquidated damages are intended to represent only certain categories of potential losses, leaving other areas free to be disputed through litigation. *U.S. v. American Surety*, 322 U.S. 96, 98 (1944).

The Court will turn first to the claimed damages that resulted from additional days of use of the 600-ton crane. The evidence shows that the original purchase order executed between the parties contained a liquidated damages provision for the operation. Assuming that the original liquidated damages clause is operative and would stand to reimburse for losses under the original purchase order, the addition of new losses from the crane rental would seem to call for larger liquidated damages. However, it appears the parties here took another path. The new damages clause stipulating liquidated damages applies clearly and directly only to delay that would affect the 600-ton crane rental. Therefore, a reasonable jury could find that the parties did not intend the original liquidated damages clause to subsume those damages. Doc. #45-1, PageID #1386. Summary judgment is therefore improper with regard to the damages resulting from the additional time with the crane rental.

The other invoice entry relating to the delay relates to additional rental days for assist tugs which were used to help the barge maneuver in the Welland Canal. Mr. Settle, who testified on Defendant's behalf, conveyed that "third-party

subcontractors that were not part of the delay scope of work" were not intended to be subsumed into the liquidated damages clause. Doc. #43-5, PageID #1340–41. However, another witness who testified on Plaintiff's behalf, Andy Hullings, stated that some third-party costs like tugs would be subsumed into the liquidated damages clause. Doc. #43-4, PageID #1066. Given these conflicting pieces of testimony, there is a factual issue present that must be determined by the jury: whether the parties intended the cost of the tugs to be included in the liquidated damages clause. As a result, summary judgment is improper with regard to the charges that resulted from additional rental days of the tugs.

Likewise, it is unclear from the briefing and evidence presented thus far whether the other charges, including the steel plate, the engineering work, and the modification to the front tie beam, were intended to be included into the liquidated damages clause. At the very least, there is insufficient evidence at this time to show whether the parties intended these items to be subsumed into the liquidated damages clause. Because a reasonable jury could find that those charges were not delay charges and therefore not a part of the delay liquidated damages clause, summary judgment is not justified on this issue.

### 3.    *Liquidated Damages Timeframe*

Defendant's final argument in their motion for summary judgment is that Plaintiff should not be entitled to any delay damages after the delivery of the crane.

16

Doc. 40, PageID #251–52. They base this argument on a reading of the liquidated damages clause of the contract which reads: "If the turnover date of 04-30-2021 or OXBO's proposed delivery date is delayed by KNES or KNES customer for any reason beyond the control of OXBO…" Doc. #40-2, PageID #294. In their view, the two dates mentioned, the turnover date and the delivery date, act as the outer limits of the liquidated damages clause and therefore bar any days after delivery from being claimed by Plaintiff. Doc. #40, PageID #251–52; Doc. #48, PageID #1712–13.

Plaintiff responds with an argument that this stance is not justified by the language of the contract. Doc. #45, PageID #1372–73. They emphasize that the contract required additional items to be completed after the delivery before the project was complete. *Id.* Plaintiff's view, therefore, is that the parties did not contemplate or agree that the liquidated damages would be cutoff upon delivery of the crane.

Defendant offers one interpretation of the contractual language but has failed to establish that it is the only reasonable interpretation. While the language could mean that the parties identified those two dates to provide goalposts on the liquidated damages, another equally logical explanation could be that those dates were specified because those would be the events most likely to cause delays attributable to Defendant. This second explanation would turn either event into a

17

potential "trigger" which could justify Plaintiff's claim to liquidated damages.[2] Thus, summary judgment is unwarranted as to the timeframe of liquidated damages available to Plaintiff.

Defendant's Motion for Partial Summary Judgment is therefore OVERRULED.

### 4. Oxbo's Promissory Estoppel and Unjust Enrichment Claims

Both the Supreme Court and the Sixth Circuit have identified that district courts have the power to grant summary judgment sua sponte at times. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Emps. Ins. Of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). Apart from the standard analysis called for in deciding an issue of summary judgment, a court must consider whether the adversely affected party had reasonable notice of the potential action. *Emps. Ins. Of Wausau*, 69 F.3d at 105.

Although not the target of Defendant's Motion for Partial Summary Judgment, the Court will examine Plaintiff's claims for promissory estoppel and unjust enrichment sua sponte. Promissory estoppel and unjust enrichment are both considered equitable remedies, providing a method for individuals to recover in the

---

[2] Defendant argues that this theory would permit Plaintiff to charge delay damages ad infinitum once the turnover date is delayed, but this is simply untrue. Doc. #48, PageID #1713. Plaintiff would only be permitted to charge delay damages to the extent that they were both actually delayed, and the delay was attributable to Defendant. For example, if the turnover date was delayed 10 days, Plaintiff could claim at most 10 days of liquidated damages, assuming they did not complete the rest of the project ahead of schedule.

absence of a valid contract. *Wuliger v. Manufacturers Life Ins.*, 567 F.3d 787, 799 (6th Cir. 2009). Even so, where an express contract covers the same subject, these equitable remedies are unavailable. *Id.* Additionally, Plaintiff had sufficient notice that equitable remedies could be dismissed by this Court, having filed their own motion asking the Court to undertake that very action. Doc. #42, PageID #456–57.

In this Court's Decision and Entry, filed February 7, 2023, Defendant's equitable remedy claims were permitted to go forward. Doc. #20. At that time, this finding was made for two reasons. First, the case was still at an early stage and discovery had not yet occurred. Second, and relatedly, it was unclear at that stage whether the claims were grounded only in the written contract between the parties or whether additional documents or testimony would be needed to gain a full sense of the dispute. Doc. #20, PageID #163–64.

As the case stands now, these two factors have changed. Discovery has been completed and the case stands on the precipice of trial. Neither party has produced evidence that this dispute will be governed by anything but the written contract.[3] While evidence outside the contract will be needed to determine the proper interpretation of the contract, that alone does not contradict a recognition that this

---

[3] This is not to say that the parties agree on the meaning of the contract. There remain factual disputes over particular terms and clauses that will need to be resolved by a factfinder.

19

is a contract-based dispute. Without any evidence presented that the contractual remedy is insufficient, the equitable remedies must be dismissed. For that reason, Plaintiff's claims for unjust enrichment/quantum meruit (Claim 2) and contract implied in fact/promissory estoppel (Claim 3) are DISMISSED.

**B.    Oxbo's Motion for Partial Summary Judgment**

Plaintiff's Motion seeks summary judgment on its breach of contract claim against Defendant as well as summary judgment on Defendant's counterclaims. Doc. #42, PageID #442.

### 1.    *Breach of Contract Claim*

To succeed on a breach of contract claim under Ohio law, a plaintiff must establish (1) the existence of a contract; (2) that the plaintiff performed its contractual obligations; (3) that the other party failed to fulfill its contractual obligations without a valid legal excuse; and (4) that the plaintiff suffered damages as a result of the breach. *Horter Inv. Management, LLC v. Cutter*, 257 F. Supp. 3d 892, 901 (S.D. Ohio 2017).

Plaintiff's breach of contract claim is straightforward. Under their theory, Defendant caused delays to the project schedule, the contract called for liquidated damages so long as delays were not documented by both parties, and the resulting lack of documented delays mean that Defendant is liable for liquidated damages covering the entire length of the delay. Doc. 42, PageID #450–51. Defendant does

20

not appear to dispute that it is liable for some measure of liquidated damages but believes that it should be permitted to show evidence of Plaintiff's delays and thereby reduce the number of days of delay they are liable for. Doc. #47, PageID #1465–67.

> Central to Plaintiff's theory is a portion of the contract which reads:
>
> Any delays caused by OXBO after the turnover date will be documented by both parties and time added to back end. Any delays caused by OXBO that "trip" KNES LD's with KNES customer will be charged back to OXBO or purchase order reduced for the LD amount of $9,975 per calendar day of delay, up to but not exceeding 5% of OXBO's total contract price.

Doc. #1, PageID #28–29. If, as Plaintiff argues, this portion created a contemporaneous documentation mandate on both parties, then there may be some merit to their position. After all, no evidence has been presented to support a claim that both Plaintiff and Defendant documented any delay time as it was happening over the course of the operation.

Defendant disputes this reading of the contract clause and Plaintiff's reasoning with three responses. First, they point out that the language in the contract does not specify that the documentation clause is designed to act as a waiver. Doc. #47, PageID #1466. Second, they argue that, because the clause required delays to be documented by both parties, the lack of documentation is a failure of both parties, not just Defendant. *Id.* Lastly, they observe that the documentation clause does not require contemporaneous documentation of delay. *Id.* Defendant also outlines

21

several events that occurred during the operation which they believe show that there are issues of material fact over whether Plaintiff contributed to the delay. *Id.* at PageID #1467–73.

As identified by both parties and this Court, summary judgment is justified when no reasonable jury could find for the non-movant. To grant summary judgment on the breach of contract claim, therefore, the evidence must show that no reasonable jury could find for Defendant under the four-part test outlined in *Horter Investment Management, LLC*. The difference in opinion between the parties centers on whether Plaintiff performed its contractual obligations and whether Defendant failed to perform theirs.

Turning first to the documentation clause within the contract, a reasonable jury could find that it did not create a mandatory, contemporaneous duty on the parties to document delays, only that it outlined how disputes over liquated damages would eventually be handled. In other words, it is unclear whether this clause represents a duty to be completed as part of the contract or merely a description of how paperwork is to be handled. Either way, nothing in the contract itself, nor the arguments advanced by Plaintiff, would prevent a reasonable jury from determining that documentation of delays did not need to be contemporaneous.

However, summary judgment may be granted if Defendant's proffered examples of delay could not lead a reasonable jury to make such a finding. In the

response, Defendant lists several examples they believe demonstrate that Plaintiff caused delays, either in whole or in part: (1) the failure to work 12-hour days; (2) the failure to have equipment ready on-site; (3) the damage to the crane while in transit; and (4) a refusal to work over the July 4th weekend. Doc. #47, PageID #1467–72. A finding that any one of these delays could be reasonably attributable to Plaintiff would then require full jury determinations of the extent of their responsibility and defeat the present motion for summary judgment.

The Court begins with the claim that Plaintiff failed to work 12-hour days and therefore contributed to the delays. The transportation manual which was the detailed account of how the operation was to be conducted, specified in a section labeled "required working hours" that each workday was estimated to consist of 12-hour days, beginning at sunrise. Doc. #1, PageID #37. Defendant provides at least two examples in which Plaintiff did not work a 12-hour day. Doc. #47, PageID #1468. Given that the manual specified that the workday was only *estimated* to consist of 12-hour days, mere allegations that Plaintiff did not satisfy those expectations cannot, by themselves, justify a showing of delay on their part; something more must be presented.

On one of the days Defendant identified, May 12, 2021, Plaintiff left the site more than two hours short of the 12-hour estimate. *Id.* the next day, Plaintiff was not prepared to receive a counterweight that was to be lowered to the ground at

9:00 AM. *Id.* Plaintiff's explanation for this is that the materials had not yet arrived on site by May 12, 2021, and therefore that they did not delay the project. Doc. #49, PageID #1761. This presents a factual dispute as to what the conditions were that day and whether Plaintiff could have done more to help ensure the counterweight could be lowered on time and without delay.

The evidence presented to this point would permit a reasonable jury to find that Plaintiff may have been jointly or solely responsible for at least some delays with this operation. As a result, it would be inappropriate for this Court to grant summary judgment to Plaintiff on their breach of contract claims.

### 2. *Konecrane's Counterclaims*

Plaintiff's second stated ground for summary judgement is on Defendant's counterclaims. Defendant brought three counterclaims alleging breach of contract (Counterclaim 1), promissory estoppel (Counterclaim 2), and unjust enrichment (Counterclaim 3). Doc. #10, PageID #78–79.

#### a. Konecrane's Breach of Contract Claim

Defendant's counterclaim for breach of contract alleges that Plaintiff failed to perform its obligations under the contract in a workmanlike manner, specifically regarding the delays caused and the damage to the crane that occurred while in transit. Doc. #10, PageID #78. Given this Court's analysis of the delays above, it is possible that a reasonable jury could find that Plaintiff caused delay in the operation

24

and therefore would have breached the contract. Summary judgment is therefore inappropriate with regard to Defendant's counterclaim for breach of contract.

### b. Konecrane's Promissory Estoppel and Unjust Enrichment Claims

Plaintiff's motion seeks dismissal of Defendants equitable counterclaims. Doc. #42, PageID #456–57. Plaintiff bases this request both on an observation that the record is further developed and upon caselaw stating that where a valid and enforceable contract exists, equitable claims such as promissory estoppel and unjust enrichment are improper. Doc. #42, PageID #456–57; *Wuliger v. Manufacturers Life Ins.*, 567 F.3d 787, 799 (6th Cir. 2009). To counter this point, Defendant directs this Court to Fed. R. Civ. P. 8 which permits pleading in the alternative and a case from the Northern District of Ohio, *Anderson Law Off., LLC v. Esquire Deposition Services, LLC*. No. 1:09-cv-1909, 2011 WL 1297180 (N.D. Ohio Mar. 31, 2011). Yet *Anderson Law Office, LLC* does not conflict with the principle described in *Wuliger* barring a party from bringing equitable claims already covered by a valid contract. While the court in *Anderson Law Office, LLC* denied summary judgment, it based it on arguments that the equitable remedies covered issues outside the contract at issue. 2011 WL 1297180, at *7.

As explained above, this case will be decided adequately under the contractual theory. *See* pp.18–20 *supra*. Defendant's promissory estoppel claim here seeks

damages incurred because of Plaintiff's failure to perform on their promise to reimburse for any damages they caused. Doc. #10, PageID #78–79. The counterclaim states that Defendant relied on Plaintiff's promises to operate "in a workmanlike manner, in compliance with the best current practices in the industry and highest engineering or other applicable standards, and in accordance with the project schedule." *Id.* A careful examination of the contract reveals that Plaintiff warranted that the work was to "be performed in a workmanlike manner, with the accurate and professional diligence, and in compliance with the best current practices in the industry and highest engineering or other applicable professional standards." Doc. #1, PageID #32.

Because Defendant's equitable counterclaims are unavailable in the presence of the contractual remedies here, Defendant's counterclaims for promissory estoppel (Counterclaim 2) and unjust enrichment (Counterclaim 3) are DISMISSED.

## IV.        Conclusion

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment, Doc. #40, is OVERRULED and Plaintiff's Motion for Partial Summary Judgment, Doc. #42, is OVERRULED IN PART and SUSTAINED IN PART. Plaintiff's Claims 2 and 3 and Defendant's Counterclaims 2 and 3 are DISMISSED.

26

Date: January 17, 2025

WALTER H. RICE
UNITED STATES DISTRICT JUDGE